DECISION
Before the Court is the motion of plaintiffs Kerrigan Hanoian (Hanoian), Joseph Triangolo (Triangolo), and Terrance Kane (Kane) for class certification pursuant to Super. R. Civ. P. 23 and the objection thereto of defendant Blue Cross and Blue Shield of Rhode Island (Blue Cross).
 FACTS AND TRAVEL
Plaintiffs participated, for a time, in Blue Cross health insurance plans. Plaintiffs allege that defendant Blue Cross engaged in deceptive practices in the calculation and payment of claims under their respective policies in violation of a fiduciary duty owed to plaintiffs by Blue Cross as administrators of their health insurance plans. Plaintiffs seek to represent those persons covered by Blue Cross health insurance plans.[1]
Plaintiffs here seek certification of four separate subclasses. The four subclasses are described below.
 THE PARTICIPATING PROVIDER OVERCHARGE SUBCLASS
The Participating Provider Overcharge subclass (Subclass #1) consists of all covered individuals who were or are covered under the Classic Blue healthcare plan who received services under the covered Healthcare Services or Major Medical sections of the Classic Blue policy from a participating provider and were credited by Blue Cross for services rendered by non-participating providers.
In brief, with respect to this subclass, plaintiffs allege that those who were covered under Classic Blue health plans were unaware which providers Blue Cross treated as participating providers. Plaintiffs allege that insureds in this subclass sought care from a medical service provider they believed was a participating provider, but Blue Cross treated their claims as if the services had been provided by non-participating providers. As a result, plaintiffs were responsible for paying the difference between the amount charged by a provider and the amount actually covered by Blue Cross. The proposed representative of this subclass is Kane through his Classic Blue coverage.
 THE PARTIAL CLAIM PROCESSING SUBCLASS
The Partial Claim Processing subclass (Subclass #2) consists of all covered individuals who were or are covered under a Classic Blue plan who submitted valid claims for processing to Blue Cross, which claims were not paid in full because the claim was processed only (and partially paid or disallowed) under the Covered HealthCare Service portion of the contract without being given further consideration under the Major Medical portion of the contract. As a result of the non-payment, covered individuals never received the full benefits to which they were entitled.
The members of this proposed subclass are those people whose co-payments were based on a percentage of the healthcare provider's or pharmacy's charge. Plaintiffs assert that their co-payments were actually more than the co-payment percentage stated in their plans because their percentage co-payments were based on the amount charged by the providers, while Blue Cross's payment was based on a discounted price that Blue Cross independently negotiated for the service. Hanoian, via his involvement in HealthMate and/or SCRIP coverage, is the proposed representative of this subclass.
 THE DEDUCTIBLE SUBCLASS
The Deductible subclass (Subclass #3) consists of all covered individuals who were or are covered under the Classic Blue plan who made deductible payments for services covered under the Major Medical coverage of the Classic Blue plan and who were credited for amounts less than the amount they actually paid toward their annual deductible requirements.
This proposed subclass alleges that when calculating an insured's deductible, Blue Cross did not credit the full amount paid by the insured. Rather, Blue Cross credited only the amount that it paid for the service. Because Blue Cross independently negotiated discounts with healthcare providers, the amount credited by Blue Cross toward an insured's deductible was less than the amount paid by the insured. As a result, the insured paid significantly more for services than the amount of the deductible before the deductible was met. The proposed representative for this subclass is Triangolo through his Classic Blue coverage.
 THE PERCENTAGE CO-PAYMENT CLASS
The Percentage Co-payment subclass (Subclass #4) consists of all covered individuals who were or who are covered by HealthMate or HealthMate 2000 plans, or who participated in any SCRIP plan involving percentage co-payments. These plaintiffs were required to make percentage co-payments in conjunction with covered health services or prescription drug purchases in which the percentage co-payment was calculated as a percentage of the provider's charge (undiscounted price), while Blue Cross's share of the co-payment was calculated from a discounted price.
Blue Cross calculated co-payments for this proposed subclass based on a percentage of the healthcare provider's or pharmacy's charge. Plaintiffs assert that their co-payments were actually more than the co-payment percentage stated in their plans because their percentage co-payments were based on the amount charged by the providers, while Blue Cross's payment was based on a discounted price that Blue Cross independently negotiated for the service. Hanoian is the proposed representative of this subclass.
In the instant matter, plaintiffs seek certification of a class comprised of themselves and all persons who were members of a Blue Cross Blue Shield plan from May 1986 to the present. Plaintiffs assert that they make a prima facie case for class certification. Defendant disagrees with this contention and argues that first, plaintiffs fail the commonality, typicality and adequacy requirements of Rule 23(a) et seq. Second, defendant contends that plaintiffs fail the predominance and superiority tests of Super. R. Civ. P. 23(b)(3). Finally, defendant argues that plaintiffs failed to seek class certification as soon as practicable under Super. R. Civ. P. 23(c)(1).
 DISCUSSION
In Rhode Island, class actions are governed by Rule 23 of the Superior Court Rules of Civil Procedure. In order to achieve certification as a class, a group of plaintiffs must satisfy the requirements set forth in subsections (a) and (b) of Rule 23. The Rhode Island Supreme Court has stated that, while those plaintiffs seeking class certification bear the burden of proving that these requirements are met, the burden is not "heavy." See Cabana v. Littler, 612 A.2d 678, 686 (R.I. 1992). The Court further stated that a court contemplating class certification should err in favor of granting class certification early in the litigation for two reasons: 1) it alerts all parties that the matter will be litigated as a class action, and 2) the decision is not final because the court retains "power to subdivide, modify or decertify the class at any time prior to judgment." Id.
 RULE 23(a)
The first step in class certification is to examine whether the proposed class meets the requirements set forth in Rule 23(a). Rule 23(a) states that class certification is appropriate when: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Super. R. Civ. P. 23(a).
 THE CLASS IS SO NUMEROUS THAT JOINDER OF ALL CLASS MEMBERS WOULD BE IMPRACTICABLE
Whether or not a proposed class is so numerous that joinder of all class members would be impracticable should be evaluated on a case by case basis where a number of factors may be considered. See Cohen v.Harrington, 722 A.2d 1191, 1196 (R.I. 1999). While the sheer size of a class alone may satisfy the numerosity requirement, the Court must consider other factors such as the practicality of joinder of each individual plaintiff. See Dale Electronics, Inc. v. R.C.L. Electronics,Inc., 53 F.R.D. 531, 534 (D.N.H. 1971). Rule 23 does not require that joinder be impossible but merely impracticable. 7A C. Wright A. Miller, et al., Federal Practice and Procedure, § 1762 at 159 (2d ed. 1986).
In this case, the Court does not need to address numerosity as Blue Cross concedes that this requirement is satisfied with respect to all four proposed subclasses. However, the issue of practicality raises two additional questions. The first question is whether each proposed class member has the financial resources to pursue his or her claim on an individual basis. See Committee of Blind Vendors v. District ofColumbia, 695 F. Supp. 1234, 1242 (D.D.C. 1988). The second issue is whether the relief sought by an individual class member is substantial enough on its own to merit the efforts of litigation.
Class certification is a tool available to the Court to encourage judicial economy by allowing one representative with similar claims to sue on behalf of a group of similarly situated people that is too large to practicably join in the litigation. See Super. R. Civ. P. 23; H. Newberg A. Conte, Newberg on Class Actions, § 1.01 (3d ed. 1992). More importantly, class actions provide motivation for individuals to pursue claims that they may not otherwise pursue because individual recovery would be too small to warrant [the cost of] litigation. SeePhillips Petroleum v. Shutts, 472 U.S. 797, 809 (1985).
In this case, with respect to Subclass #1, if each individual policy-holder brings his/her own suit against Blue Cross, the potential recovery represents the difference between the amount paid by Blue Cross and the amount charged by the non-participating provider of service. The potential recovery for members of Subclass #2 is the difference between co-payments made by members of this subclass that were calculated based on a percentage of the healthcare provider's or pharmacy's charge and payments made by Blue Cross that were based on a discounted price that Blue Cross independently negotiated for the service. Members of Subclass #3 stand to recover the difference between the amount actually paid by the insured and the amount credited by Blue Cross toward an insured's deductible, which plaintiffs allege is less than the amount the insured actually paid toward the deductible. Finally, with respect to Subclass #4, potential recovery represents the difference between co-payments paid by the potential class members, which were actually more than the co-payment percentage stated in their plans because their percentage co-payments were based on the amount charged by the providers, while Blue Cross's actual payment was based on a discounted price that Blue Cross independently negotiated for the service.
The potential recovery for each subclass amounts to the difference in value between what the insured paid out-of-pocket and the amount that Blue Cross agreed to cover under each respective plan. These differences in value represent small monetary relief. For example, plaintiff Triangelo, paid an additional three dollars for one of his wife's doctor's visits because the doctor charged $45 for the visit and Blue Cross only credited him with a $42 payment, explaining that $42 was the maximum allowed for that type of service according to their "Explanation of Benefits" form. Plaintiff Kane was reimbursed only $33.60 of a $65 doctor's visit because Blue Cross processed the claim as if the doctor Kane visited was not on its list of preferred providers, when in fact, according to plaintiffs, he was on the list. According to plaintiffs, Triangelo and Kane's nominal claims in this case are typical of the claims of other class members.
As a result of the fact that each individual class member in this case would probably not recover enough in a similar individual action to warrant the costs of litigation, it follows that each proposed class member does not have the financial resources to pursue such nominal claims. However, if these claims are tried in the aggregate as a class action, the costs of litigation will be allayed and the recovery, if awarded, will be substantial, thus justifying the effort and expense of litigation.[2] Thus, class certification is appropriate under Rule 23(a)(1).
The Rhode Island Superior Court has jurisdiction over civil claims of $5000 and above. See R.I.G.L. § 8-2-14. In Carvalho v. Coletta,457 A.2d 614, 616 (R.I. 1983), the Rhode Island Supreme Court adopted the United States Supreme Court's standard regarding the aggregation of individual claims in a class action. Class members may aggregate their individual claims in a class action in order to satisfy a court's prerequisite jurisdictional amount only when those claims represent a single shared right in which all the class members have a common and undivided interest. See Carvalho v. Coletta, 457 A.2d 614, 616 (R.I. 1983). The claims cannot be divisible. See id. Claims are divisible when each individual class member has a separate and distinct claim in a single suit.[3] See Freitas v. First N.H. Mortgage Corp., C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998). If they are divisible, then they cannot be aggregated to satisfy the prerequisite jurisdictional amount. See id. When the claims are divisible, each individual claim must satisfy that court's requisite jurisdictional amount in order for that court to maintain subject-matter jurisdiction over the entire class. Id.
In this case, each individual claim of the proposed class members is divisible because each policy represents separate rights reserved for each policy-holder. The proposed class members do not share one common right against Blue Cross. Certainly, if one policy-holder did not collect from Blue Cross, the shares of the remaining plaintiffs would not increase. Thus, in order for this Court to maintain subject-matter jurisdiction over the proposed class action, each individual member of the class must have a claim for at least $5000 against Blue Cross. Because there is no evidence to show that this requirement is satisfied, class certification would otherwise fail but for the equitable relief plaintiffs seek in the form of an injunction requiring Blue Cross to modify its practices with respect to the actions alleged in this case.
The Rhode Island Superior Court has sole jurisdiction over issues of equity, such as the granting of an injunction. Rule 23(b)(2) states in relevant part:
 "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Super. R. Civ. P. 23(b)(2).
Plaintiffs in this case seek both injunctive and declaratory relief with regard to behavior by Blue Cross allegedly applicable to the class as a whole. Plaintiffs claim that this suit is designed to determine the legality of that behavior. As a result of the equitable relief that plaintiffs seek in the form of an injunction, this Court maintains subject-matter jurisdiction over the claims in this case. See R.I.G.L. § 8-2-13.[4]
 THERE ARE QUESTIONS OF FACT AND LAW COMMON TO ALL CLASS MEMBERS
Class certification is appropriate where there are questions of fact and law that are common to all proposed class members. See Super. R. Civ. P. 23(a)(2). Under Rule 23(a)(2), commonality requires that "questions of law or fact common to the class exist" and the representative plaintiff's claims share at least one question of fact or law with the claims of the prospective class. See Caranci v. Blue Cross Blue Shield, 1999 WL 7664, at *12 (D.R.I. August 19, 1999). This is not an exacting standard as complete identity or predominance of claims is not required for class certification. See id; A. Miller, An Overview ofFederal Class Actions, 25 (1977). Commonality can arise when every member of a purported class receives a document which becomes the main issue of litigation. See Bertozzi v. King Louie Int'l, Inc., 420 F. Supp. 1166, 1176 (D.R.I. 1976).
In this case, commonality is satisfied with respect to all four subclasses because all the proposed class members were covered under substantially identical policies, depending, of course, on the type of policy at issue with each subclass. Plaintiffs, through the coverage provided them, were subject to relatively similar terms and were all allegedly harmed by Blue Cross's denied breach of duty in administering each policy. Clearly, this proposed class is similar to the class inBertozzi because each proposed member was covered under an identical policy promising certain healthcare coverage. Thus, each proposed class member was subject to a document, a policy agreement, which is now the main focus of this litigation.
The policies were issued by Blue Cross to plaintiffs in this case. The policies shared the same wording. The circumstances surrounding administration of the various policies, namely the partial coverage or total lack thereof by Blue Cross of medical claims by plaintiffs, are the subject of this litigation. There is no instance where the Court must consider facts independent of the various policies or Blue Cross's subsequent actions with regard to them in order to resolve this case.
Further, according to plaintiffs, there are seven questions which are common to all proposed class members. They are:
 1) Does Blue Cross owe a fiduciary duty to the class?
 2) If so, what is the nature of that duty?
 3) Does Blue Cross's retention of discounts violate that fiduciary duty?
 4) How should the Court interpret the language at issue in Blue Cross's plans?
 5) Did Blue Cross fail to administer the plans in accordance with their terms?
 6) Are plaintiffs entitled to reimbursement by Blue Cross?
 7) Should a permanent injunction be imposed against Blue Cross to prevent it from continuing the alleged practices? See Plaintiffs' Motion For Class Certification at 16.
Because the Court will be called upon to apply the same legal principles to resolve claims arising from a common set of facts, depending upon subclass, and there are common questions which must be answered with respect to all class members, commonality is indeed satisfied in this case. Accordingly, class certification is appropriate under Rule 23(a)(2).
 THE CLAIMS OF THE NAMED PLAINTIFFS ARE TYPICAL OF THE PROPOSED CLASS 
Rule 23(a)(3) requires that the claims of the named plaintiff in a class action be typical of the entire class in order to assure that the claims of the class will be advanced if for no other reason than the plaintiff's own self-interest in the outcome of the litigation. See In reUnited Energy Corp., 122 F.R.D. 251, 256 (C.D.Cal. 1988); Wright and Miller, § 1764. A plaintiff's claims are typical of a class when his claims arise from the same set of facts that give rise to the claims of the other class members and are based on the same legal theory. See In reUnited Energy Corp., 122 F.R.D. at 256. As long as the representative plaintiff and the class are injured by the same sequence of events, factual discrepancies among the various claims will not defeat typicality. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).
Like the foregoing commonality analysis, the typicality requirement is satisfied in this case as well. The claims of the named plaintiffs are typical of the subclasses they seek to represent because each named plaintiff alleges damages based on conduct by Blue Cross that is generally applicable to the entire subclass. For example, as discussed above, plaintiff Kane seeks to represent Subclass #1. Members of this subclass allege that people who had Classic Blue health insurance were unaware which providers Blue Cross would treat as participating providers. These plaintiffs, Kane among them, sought care from medical service providers they believed were participating providers, but Blue Cross treated their claims as if the services had been provided by non-participating providers. As a result, the insureds bore responsibility for paying the difference between the amount charged by the provider and the amount paid by Blue Cross.
According to plaintiffs, Kane paid $65 for a visit to a doctor who, he alleges, was on Blue Cross's list of preferred providers. Blue Cross processed the claim as if the doctor Kane visited was not on its list of preferred providers and accordingly reimbursed him only $33.60 of the $65 he paid out-of-pocket. Thus, Kane sustained $31.40 worth of damage on this claim.
Clearly, Kane's claim is typical of the claims of the entire subclass. These are the same facts giving rise to any potential claim of any individual proposed member of Subclass #1. It is clear that by pursuing his own interest in the outcome of this case, Kane will benefit the entire subclass and advance the class members' interests because his claims align with those of the entire subclass class. The analysis is the same for Subclasses #2-4 and do not bear repeating here. Thus, the Rule 23(a)(3) requirement is met in this case as well.
 THE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS 
Finally, with regard to Rule 23(a)(4), plaintiffs in a class action must fairly and adequately represent the entire proposed class. Super. R. Civ. P. 23(a)(4). There are two factors to consider when determining whether the adequacy and fairness requirements are satisfied. The first consideration is whether counsel for the representative plaintiff is "qualified, experienced, and generally able to conduct the proposed litigation." Eisen v. Carlisle Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). Second, no conflict of interest may exist between the representative plaintiff and any of the other proposed class members.Id. To determine this, the Court must examine whether an alleged conflict "go(es) to the very subject of the litigation." Caranci, 1999 WL 766974, at *17. The burden of disproving adequacy is on the party objecting to it. Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir. 1992).
In this case, representation of the proposed subclasses by the named plaintiffs will be fair and adequate. First, plaintiffs' local counsel, Amato A. DeLuca (DeLuca), Miriam Weizenbaum (Weizenbaum) and Peter N. Wasylyk (Wasylyk), as well as their out-of-state counsel, Wood Foster (Foster) and Jordan M. Lewis (Lewis), are qualified to conduct this litigation. DeLuca, Weizenbaum and Wasylyk are active Rhode Island practitioners whose combined resources and legal experience will enable them to conduct litigation of this size and intricacy. Wasylyk further submits an affidavit to this Court detailing the hundreds of hours of pre-filing investigation that he undertook in this case. He also indicates that he is aware of the multitude of hours invested by all co-counsel in this case.
While plaintiffs' out-of-state counsel do not practice regularly before this Court, they submited an affidavit detailing their extensive experience and involvement in this case. Furthermore, plaintiffs' attorneys have already demonstrated their ability to litigate this case. They have labored through enough pre-trial proceedings to establish their diligence and commitment to this litigation. Most importantly, however, counsel has demonstrated their ability to litigate this matter through their representation of plaintiffs in the federal counterpart of this case, Caranci v. Blue Cross Blue Shield, 1999 WL 7664, at *1 (D.R.I. August 19, 1999). Clearly, DeLuca, Weizenbaum, Wasylyk, Foster and Lewis have the combined resources and experience to adequately protect the interests of all four proposed subclasses.
Second, there is no conflict of interest between the named plaintiffs and any of the proposed class members in this case. There are no facts to indicate that plaintiffs' interests in this case are different or contrary to any of the proposed class members' interests. Again, the claims of each plaintiff arise from the same set of facts that give rise to the claims of all of the respective proposed subclass members. There are no legal or factual discrepancies between the claims of plaintiffs and any members of the proposed subclasses. Plaintiffs bring this action based on policy language that is common to all the policies at issue in this litigation. Thus, the requirements of Rule 23(a)(4) are satisfied.
 RULE 23(b)
After the four prerequisites of Rule 23(a) are satisfied, the Court must next determine whether an action is maintainable under Rule 23(b). An action is maintainable under Rule 23(b) when at least one of the subsections is satisfied. A class action is maintainable in this case under both Rule 23(b)(2) as well as Rule 2(b)(3).
 CLASS SEEKING INJUNCTIVE RELIEF
Under Rule 23(b)(2), class certification is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory judgment with respect to the class as a whole." Super. R. Civ. P. 23(b)(2). The rule does not require, however, that every member of the proposed class actually "be aggrieved by or desire to challenge the defendant's conduct . . . ." Jones v. Diamond,519 F.2d 1090, 1100 (5th Cir. 1975). Rather, Rule 23(b)(2) requires that each member of the proposed class would have standing to challenge the defendant's conduct if he/she so chose to because the conduct at issue is common to all class members. Id. at 1100. Further, "where the litigation seeks to define the relationship between the defendant and the world at large" and the relief sought by the named plaintiff will benefit the entire class, certification is appropriate under Rule 23(b)(2). Baby Nealv. Casey, 43 F.3d at 58.
In this case, plaintiffs' claims arise from Blue Cross's alleged failure to provide healthcare coverage in the manner it promised plaintiffs in their respective policies. This resulted in plaintiffs receiving either partial coverage or total lack of coverage with respect to certain healthcare services that plaintiffs otherwise understood to be covered by their policies.
Plaintiffs allege that Blue Cross persists in the behavior at issue in this case and they seek an injunction requiring Blue Cross to modify its practices with respect to the actions alleged in this case. Plaintiffs claim that this suit is designed to determine the legality of that behavior and to that end, they seek a declaratory judgment. Thus, plaintiffs call upon this Court to do equity and determine whether Blue Cross's conduct is in fact a breach of fiduciary duty. If so, plaintiffs seek an injunction to end that behavior.
This Court notes that the proposed subclasses here are similar to the class certified in Groover v. Michelin North Am., Inc., 187 F.R.D. 662 (N.D.Ala. 1999), where a class of retirees, claiming their former employer had unilaterally changed healthcare benefits provided to them under certain pension and insurance agreements, was certified because the plaintiffs sought injunctive relief to restore them to their positions under the contract before their employer's changes. The plaintiffs inGroover sought monetary relief for past deprivation of such benefits. Plaintiffs in this case seek an injunction requiring Blue Cross to modify its practices with respect to the actions alleged in this case. LikeGroover, class certification is appropriate here under Rule 23(b)(2) because Blue Cross's alleged failure to administer plaintiffs' healthcare coverage in accordance with the policies plaintiffs purchased is an allegation "generally applicable to the class" which may warrant "final injunctive relief with respect to the class as a whole." Id at 671.
 QUESTIONS OF LAW OR FACT COMMON TO THE CLASS MEMBERS PREDOMINATE OVER ANY QUESTIONS AFFECTING ONLY INDIVIDUAL CLASS MEMBERS
Under Rule 23(b)(3), a class action is maintainable when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Super. R. Civ. P. 23(b)(3). While a Rule 23(b)(3) analysis may be similar to a Rule 23(a) commonality analysis, the Rule 23(b)(3) test is actually more rigorous than its section (a) counterpart because after determining commonality, the Court must determine that those common issues predominate over any individual claims that may exist. While the predominance test is more rigorous than a commonality assessment, it is not overly restrictive. SeeLerch v. Citizens First Bancorp., Inc., 144 F.R.D. 247, 252 (D.N.J. 1992). Where plaintiffs' claims arise from a single course of action by the defendant and each class member's claim or defense does not require separate adjudication, the predominance test is met. See Seidman v.American Mobile Sys., Inc., 157 F.R.D. 354, 366 (E.D.Pa. 1994); Wright 
Miller, § 1778. Further, courts have held that a question regarding the amount of damages suffered by an individual class member is not enough to defeat certification where common questions of liability predominate. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).
A class action is maintainable in this case under Rule 23(b)(3) because common questions of both fact and law predominate over any individual claim. As discussed at length above, any individual claim in this case arises from both a policy that is common to all the subclass members and a course of action taken by Blue Cross that affected the policy rights of each proposed class member. There is nothing indicating that there are any divergent individual claims necessitating separate litigation and rendering class certification inappropriate.
As previously discussed, there are seven questions common to all proposed class members. Because these seven questions arise from factual scenarios that are common to all the proposed subclass members, namely that each proposed class member was covered by a healthcare policy from Blue Cross with certain terms that Blue Cross allegedly breached, their resolution will bind the entire class.
With regard to the predominance of the legal questions involved in this case, the Court will apply Rhode Island law because Blue Cross is a Rhode Island company and plaintiffs are Rhode Island citizens who were covered under plans negotiated for them by either themselves or by their non-ERISA employer. Because the facts in this case are common to all plaintiffs, depending upon subclass, and Rhode Island law will apply to all claims, the predominance requirement of Rule 23(b)(3) is satisfied in this case because common questions of law and fact predominate over any individual claim.
 A CLASS ACTION IS SUPERIOR TO OTHER METHODS OF ADJUDICATION
Further, qualification under Rule 23(b)(3) requires that in order to receive class certification, a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Super. R. Civ. P. 23 (b)(3). In other words, "a class action must be the best method of adjudication." Zarrella v. MinnesotaMutual Life Insurance Co., 1999 WL 226223, at *10; 5 Moore's § 23.48[1], at 23-25. The Court must consider the following four factors to determine whether this requirement is satisfied:
 "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
 (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 (C) the desirability or undesirability of concentrating the litigation of the claims in the the particular forum;
 (D) the difficulties likely to be encountered in the management of a classification." Super. R. Civ. P. 23(b)(3).
In this case, class action is the best method of adjudication. First, as previously discussed, because individual relief in this case will be nominal and the cost of litigation will be high, many Blue Cross policy-holders may be discouraged from enforcing their contract rights against Blue Cross. However, faced with the possibility of a substantially greater aggregate reward, consolidation of numerous small claims will alleviate and justify the high costs of litigation.
Second, due to the commonality of the facts and the law in this case, there is little possibility that any one member of any of the proposed subclasses would have any interest in individually controlling the action. By pursuing their own interests in the case, the named plaintiffs will adequately represent the respective interests of each subclass. Further, judicial efficiency is served by concentrating the litigation in one forum and facilitating the resolution of these claims.
The only remaining concern in this case is the issue of manageability. Manageability most commonly defeats a finding of superiority when there is a need to litigate numerous individual questions of law and fact. SeeIn re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 221 (W.D.Mich. 1998). In Zarrella, this Court found that a class action was unmanageable because "widely variant" laws of other states would govern the claims of the proposed class members. See Castano v. American TobaccoCo., 84 F.3d 734, (5th Cir. La. 1996).
This is not the case here because there is nothing to show that widely variant state law must be applied to any individual claim in this case. As the Court noted above,
Rhode Island law will apply to the claims in this case. Further, commonality of fact is well-established in this case, leaving no issue of manageability with respect to questions of fact. Thus, manageability is satisfied under Rule 23(b)(3)(D), as are the other requirements of this section, and class certification is appropriate in this case.
 RULE 23(c)
Normally, a court considering class certification does not need to examine the requirements of Rule 23(c) at the certification stage because that section of the rule deals with the timely manner in which plaintiffs seeking class certification must file their motion and class certification is appropriate after the requirements of Rule 23(a) and (b) are satisfied. However, defendant in this case claims that class certification is inappropriate here because plaintiffs failed to file their motion in a timely manner. Accordingly, this Court will briefly address Rule 23(c).
Rule 23(c) requires:
 "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." Super. R. Civ. P. 23(c)(1).
As a general rule, there is no specific deadline by which a court must act. Montelongo v. Meese, 803 F.2d 1241, 1351 (5th Cir. 1986), cert.denied, 481 U.S. 1048 (1987) (District Court did not abuse its discretion in granting certification three years after suit was instituted where delays were caused by plaintiffs' post filing discovery efforts, docket backlog and where defendants were not prejudiced by the delay.). It is within the discretion of the trial judge to determine timeliness. "When cases are examined, one finds that each suit has its case history and surrounding circumstances that affect the practicalities of reaching an initial class determination. Newberg on Class Actions § 7.14, at 7-47 (3d ed. 1992). In Polich v. Burlington Northern, Inc., 116 F.R.D. 258 (D.Mont. 1987), the court concluded that where the proposed class representatives had difficulties in obtaining responses to discovery, a motion for class certification was timely although filed one year after the initial complaint. See generally, Brown v. J.P. Allen Co., 79 F.R.D. 32, 35 (N.D.Ga. 1978); Chateau de Ville Prod. v. Tams-Witmark Music., 586 F.R.D. 962, 966 (2d Cir. 1978).
In Cabana, the Rhode Island Supreme Court discussed the responsibility of the class representatives in moving to certify a suit as a class action:
 "Rule 23 requires the class proponent to make a timely motion to certify the suit as a class action and to present evidence from which the court can conclude that class-certification requirements are met. The rule does not state when this burden must be met, but the Federal Rule 23(c)(1) codifies the majority view that certification should be determined as soon as practical." Cabana v. Littler, 612 A.2d 678 (R.I. 1992).
The Cabana court held that plaintiffs had not sustained their burden to certify as soon as practicable because they failed to satisfy certification requirements in a time period which exceeded eight-and-one-half years. See id. The Federal District Court for the District of Rhode Island has determined that "the current practice is to determine maintainability of the class to identify and structure the class at the earliest pragmatically wise moment." Berman v. NarragansettRacing Association, 48 F.R.D. 333, 336 (D.R.I. 1969).
A review of the history surrounding the present case shows that plaintiffs have complied with the as soon as practical requirement of Rule 23(c)(1). This case was originally filed, along with the federal case, in 1996. In November of 1998, two-and-one-half years later, the plaintiffs filed a motion to certify the current class. The procedural history reveals that both plaintiffs and defendant were met with burdensome discovery requests that were often difficult to obtain and included documents consisting of hundreds of pages. Also, plaintiffs met with several motions, including a motion to dismiss. This Court finds that the motion to certify was brought as soon as practicable due to the intervening circumstances surrounding the case.
Furthermore, the federal portion of this case consumed much of plaintiffs' time and effort. In a pragmatic approach, plaintiffs' counsel took advantage of the overlap between the issues in the federal portion of this case and those in the instant action. Counsel used the federal case as a vehicle for discovery for the instant case, which involves identical claims. This Court believes that the motion to certify the instant action was brought at the most pragmatically wise time, benefiting the plaintiffs involved. The defendant, in turn, was not burdened by this approach.
After careful review of the arguments submitted by the parties in this case, this Court finds that plaintiffs have satisfied the requirements for class certification as set forth in Rule 23 of the Rhode Island Rules of Civil Procedure. Thus, the Court deems class certification appropriate in this case. Plaintiff's counsel shall present an appropriate order consistent with the foregoing.
[1] An action commencing in 1996 was brought in the United States District Court for the District of Rhode Island on behalf of Blue Cross members who are currently or were formerly covered by an employee welfare benefit plan subject to the Employee Retirement Income Security Act (ERISA) and underwritten or administered by Blue Cross between June 1, 1986 and the date of the complaint. The current case is the non-ERISA counterpart to this case which involves representatives who do not fall within the purview of ERISA.
[2] The Court emphasizes that its discussion of aggregated claims is for practicality purposes only and does not go to the legal issue of jurisdiction of the Superior Court in this case.
[3] The Court in Freitas v. First N.H. Mortgage Corp., C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998) distinguishes a separate and distinct claim from a common and undivided interest by explaining that "an identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." Freitas v. FirstN.H. Mortgage Corp, C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998) (quoting Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983)).
[4] Refer to pages 15-17 hereinafter for further discussion of this issue.